IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:_____

PERMANENT GENERAL ASSURANCE CORPORATION OF OHIO, an Ohio corporation

    Plaintiff,

vs.

PAUL FABRIZIO,
JULIENNE FABRIZIO,
JUSTIN SCHWEAR,
CAMIE RANDALL, as mother and lineal heir to TERRIN SPITZ, and
DENVER TRANSFER GROUP a/k/a GENTLE HANDS MOVING AND DELIVERY, a Colorado limited liability company.

    Defendants.

_____

## COMPLAINT FOR DECLARATORY JUDGMENT
_____

Plaintiff Permanent General Assurance Corporation of Ohio, by and through its attorneys, Lambdin & Chaney, LLP, for its Complaint for Declaratory Judgment, states the following:

### JURISDICTION AND PARTIES

1. Plaintiff Permanent General Assurance Corporation of Ohio ("Permanent General") is an Ohio corporation with its principal place of business in Nashville, Tennessee.

2. Defendant Paul Fabrizio and Julienne Fabrizio are Colorado residents.

3. Defendant Justin Schwear is a Colorado resident.

4. Defendant Camie Randall, as mother and lineal heir to Terrin Spitz, is a Colorado resident.

5. Defendant Denver Transfer Group a/k/a Gentle Hands Moving and Delivery is a Colorado limited liability company.

6. Plaintiff is of diverse citizenship from the Defendants. The matter in controversy exceeds, exclusive of interest and costs, the sum specified in 28 U.S.C. § 1332.

7. All necessary parties under Fed. R. Civ. P. 57 and 28 U.S.C. § 2201 are before the court.

## FACTUAL BACKGROUND

### A. The Accident

8. According to the Traffic Accident Report attached as **Exhibit 1**, on February 24, 2018, Justin Schwear was driving a 2012 International Truck with a gross vehicle weight rating of 10,001 to 26,000 pounds. It was owned by HHK Vehicles, Inc. and was being operated by Gentle Hands Moving, Carrier Identification #2429091

9. Justin Schwear's address was 9045 W. 45th Place, Wheat Ridge, Colorado 80033.

10. The 2012 International Truck was owned by HHK Vehicles, Inc. and was being operated by Gentle Hands Moving. It had a Gross Vehicle Weight Rating of 10,001 to 26,000 pounds.

11. Terrin Spitz was a passenger in the 2012 International Truck.

12. Justin Schwear ran off the side of the road, impacting three trees, before coming to a rest.

13. The collision resulted in Terrin Spitz's death.

**B.     <u>The Underlying Lawsuit</u>**

14. On February 12, 2019, in an action filed in Denver District Court, Camie Randall, as mother and lineal heir to Terrin Spitz (now deceased) filed an Amended Complaint ("Underlying Lawsuit") against Denver Transfer Group a/k/a Gentle Hands Moving and Delivery, a Colorado limited liability company; and Justin K. Schwear, attached as ***Exhibit 2***.

15. The Underlying Lawsuit alleges:

   ¶ 2   Defendant Transfer Group a/k/a Gentle Hands Moving and Delivery (hereinafter referred to as "Defendant Gentle") is a for profit corporation organized under the laws of the State of Colorado and actively doing business in the State of Colorado with a principal address of 1888 Sherman Street, Denver, Colorado 80203.

   ¶ 3   Defendant Justin Schwear is a resident and domiciliary of the City of Wheat Ridge, County of Jefferson, State of Colorado with an address of 9045 West 45th Place, Wheat Ridge, Colorado 80033.

   ¶ 5   On February 27 (sic), 2018, Terrin Spitz was riding as a passenger in a 2012 International Truck driven by Defendant Justin Schwear.

   ¶ 6   Upon information and belief, Defendant Justin Schwear and Mr. Spitz were acting in the course and scope of their employment with Defendant Gentle as the time of the accident.

   ¶ 8   Defendant Gentle had no Workers' Compensation coverage available for Terrin Spitz and is accordingly limited to defenses in this action pursuant to C.R.S. § 8-41-101.

   ¶ 11  Plaintiff asserts wrongful death damages for the benefit of the Plaintiff and against the Defendants in accordance with C.R.S. §§ 13-20-101 <u>et seq.</u>, 13-21-201, 13-21-202, 13-21-203, and 13-21-203.5.

   ¶ 12  As a direct and proximate result of the Defendants' negligence, Plaintiff's damages arising out of the death of her son, include

grief, loss of companionship, impairment of the quality of their life, inconvenience, pain and suffering, and emotional distress. Plaintiff has incurred and are (sic) entitled to recovery for reasonable funeral expenses as well as net financial loss sustained by the Plaintiff due to the death of Terrin Spitz.

16. Camie Randall, through her attorneys at Anderson Hemmat, LLC, is asserting that Justin Schwear is an insured under a policy issued by Plaintiff Permanent General to Paul and Julienne Fabrizio.

17. After Permanent General denied coverage, Anderson Hemmat, LLC provided Notice of Damages Hearing following Defendant Schwear's entry of default in the Underlying Lawsuit.

18. Despite repeated requests, Anderson Hemmat, LLC has not provided its reasoning as to why it believes there would be coverage under Permanent General 's personal auto policy.

### C. The Insurance Contract

19. Permanent General first issued Personal Auto policy number CO2870044 to Paul Fabrizio effective 03/23/2016, which renewed and was in effect on the date of this Accident with an effective policy period of 09/30/2017 to 03/31/2018.

20. The complete policy with all endorsements is attached as ***Exhibit 3***.

21. Paul Fabrizio's address on the Policy Declarations was listed as 9535 W. 53rd Place, Arvada, CO 80002-2939.

22. As shown on the Renewal Policy Declarations, the Drivers/Household Members included:

| | Drivers/Household Members | DOB | Gender / Marital | | Points |
|---|---|---|---|---|---|
| 1. | PAUL FABRIZIO | 08/18/1962 | M | M | 000 |
| 2. | JULIENNE FABRIZIO | 12/31/1961 | F | M | 000 |
| 3. | CHRISTOPHER FABRIZIO | 12/18/1996 | M | S | 001 |

4

23. The listed vehicles included:

| | Vehicles | VIN |
|---|---|---|
| 1. | 2014 FORD MUSTANG | 1ZVBP8AM3E5304161 |
| 2. | 2007 FORD EXPLORER SPORT | 1FMEU518X7UA38992 |
| 3. | 2016 FORD FOCUS ST | 1FADP3L93GL253627 |

24. Endorsements Made Part of this Policy at Time of Issuance included:

Endorsements Made Part of this Policy at Time of Issuance:
PA 039-1112-CO     PA001-0517-CO     PA111-0517-CO

25. Endorsement PA 039-1112-CO was the Insurance Application completed by Paul Fabrizio on March 23, 2016. Mr. Fabrizio represented none of the listed vehicles were used to conduct business; that all household residents over the age 14 were listed; that all persons that may regularly or occasionally driver a listed vehicle were identified; and that neither the named insured nor any driver owned any other motor vehicles not insured by Permanent General.

26. In the Colorado Auto Policy Form Number PA001—517-CO, under **GENERAL AGREEMENT TO INSURE**:

    1. Subject to all terms of this policy, **we** agree to insure **you** for the coverages **you** buy from **us**, as shown on the **declarations page**, if:

        b. The **information you** gave **us** in **your application** is truthful and correct.

    3. This policy is part of a binding legal contract between **you** and **us**. The contract also includes all of these forms (which are all hereby made a part of this policy as if attached):

        a. The **application**, and **information** within it upon which **we** relied when issuing this policy;
        b. The **declarations page**;
        c. Endorsements **we** issue; and
        d. Coverage election and rejection forms.

27. Under **PART I – LIABILITY COVERAGE**, **Insuring Agreement:**

    1. Subject to the limits of liability, if **you** buy Liability Coverage from **us** on this policy, **we** will pay compensatory damages, for which an **insured person** is legally liable to others because of:
       a. **Bodily injury**; or
       b. **Property damage**;
       that results from a **motor vehicle accident**. These damages include prejudgment interest on compulsory damages that may be awarded against an **insured person**.

28. Under **PART I – LIABILITY COVERAGE**, **Additional Definitions:** "**Insured**", in this Part I, means:
    1. **You**, a **family member** or an **insured driver** for the ownership or **use** of a:
       a. **Covered auto** covered by this Part I;
       b. **Non-owned auto** or **temporary substitute auto**; or
       c. Trailer while being towed by a **covered auto**, a **non-owned auto**, or a **temporary substitute auto**.

29. Under **Exclusions:**
    1. **We** have no duty to defend and **we** do not provide this Part I – Liability Coverage for an **person** for:
       d. **Bodily injury** to an employee, co-employee or employer of that **insured person** that arises out of or in the course and scope of employment.
       g. **Bodily injury** or **property damage** arising out the ownership or **use** of any vehicle, other than a **covered auto**, which is **owned** by, furnished to, or available for the regular or frequent **use** of **you**, any **insured driver**, any **family member**, or any **person** who **resides** in **your household**.
       m. Liability assumed under a contract or agreement.
       n. **Bodily injury** or **property damage** that arises out of the ownership or **use** of a **covered auto** when it is:
          (1) Rented, leased, loaned, sold or given to anyone in exchange for any form of value, compensation or reimbursement;
          (2) Entrusted to another **person** or party for the purpose of subleasing, leasing, renting or selling and is no longer in **your** possession; or
          (3) Under a conditional sales agreement and is no longer in **your** possession.

30. Under **POLICY DEFINITIONS:**
    In this policy:
    3. **"Additional acquired auto"** means any **auto you** acquire, other than a **replacement auto**, when **you** become the **owner** during the policy period in effect if:
       a. **We** insure all **autos owned** by **you** on the date **you** take possession of the newly acquired **auto**;
       b. No other valid and collectible insurance policy provides coverage for that **additional acquired auto**;
       c. At **our** request, **you** make the **additional acquired auto** available for inspection by **us** or **our** representative;
       d. **You** comply with any inspection requirements imposed by law; and
       e. **You** pay the premium required by **us.**
       As to an **additional acquired auto**:
       c. It will have coverage only for the first 14 days after **you** become the **owner** unless **you** ask **us** within the initial 14-day period that **you** want to extend coverage for the **auto** beyond the initial 14 days.
       d. If **you** do NOT ask **us** to insure the **additional acquired auto** within 14 days after **you** become the **owner**, no insurance applies to that **additional acquired auto** until after **you** ask **us** to insure it and **we** agree to insure that **additional acquired auto**.
    6. **"Auto"** means a **motor vehicle** of the private passenger type sedan, pickup truck, van or sport utility van that:
       a. Has a gross vehicle weight rating stated by the **manufacturer** that is no greater than 10,000 pounds;
       b. Has either four wheels, or is a six wheel dual rear wheel pick-up truck[.]
    8. **"Business"** means any full-time or part-time job, trade, profession, occupation, employment or commercial activity of any kind. **Business** includes the transport of tools or supplies in an **auto** between multiple job sites.
    11. **"Covered auto"** means:
        a. A **motor vehicle** that:
           (1) **You** have asked **us** to insure; and
           (2) Is shown on the **declarations page**;
           but only for the coverage(s) that have been bought for it.
        b. An **additional acquired auto.**
        c. A **replacement auto**.

7

        An **auto** or **motor vehicle** ceases to be a **covered auto** when it is sold, assigned, gifted, titled transferred, or possession permanently transferred, to anyone other than **you**, a **family member** or an **insured driver.**

19. **"Family member"** means a **person** who (even if temporarily living elsewhere):
    a. **Resides** in **your household** and is related to **you** by blood, marriage or adoption;
    b. Usually **resides** in **your household** and is **your** ward or foster child.
21. **"Household"** means the place:
    a. Where the **named insured resides**; and
    b. Which is located at the address shown on the **declarations page**.
24. **"Insured driver"** is a **person** specifically identified on the **declarations page** as an active driver under this policy.
31. **"Motor vehicle"** means a self-propelled land **motor vehicle** that is:
    a. Subject to **state motor vehicle** registration laws; and
    b. Designed for **use** on public roads and highways.
34. **"Non-owned auto"** means an **auto**, it if is:
    a. **Used** with the express permission of the **owner** of the **auto** and within the scope of that permission;
    b. Not **owned** by, registered to or available for regular or frequent **use** by **you**, a **family member**, an **insured driver**, or any **person** who **resides** in **your household;**
    c. Not **owned** by, leased to or rented to **your** employer or the employer of any **family member**, **insured driver**, or any **person** who **resides** in **your household**;
    d. Not **used** for **business** purposes;
    e. Not an **auto** rented for more than 60 consecutive days by **you**, a **family member**, **insured driver**, or any **person** who **resides** in **your household;** or
    f. Not an **auto** in possession, for more than 60 consecutive days, by **you**, a **family member**, an **insured driver**, or any **person** who **resides** in **your household**.

    A **non-owned auto** does not include a **temporary substitute auto.**
39. **"Own, "owned"** and **"owns"** mean, as to a **motor vehicle**, to:
    a. Hold legal title; or

      b.    Have primary legal possession:
- (1) Subject to a written conditional sales agreement; or
- (2) Under a lease agreement of at least six continuous months.

40. **"Owner"** means, as to a **motor vehicle**, the **person** or party who:
   a. Hold legal title; or
   b. Have primary legal possession:
      - (1) Subject to a written conditional sales agreement; or
      - (2) Under a lease agreement of at least six continuous months.

41. **"Person"** means a human being. A **person** does not include any corporation, partnership, association or **business.**

46. **"Replacement auto"** means an **auto** that **you** acquire, when **you** become the **owner**, if:
   a. It replaces a **covered auto** shown on the **declarations page**;
   b. **You** no longer **own** the replaced **covered auto**;
   c. No other valid and collectible insurance policy provides coverage;
   d. At **our** request, **you** make the **replacement auto** available for inspection by **us** or **our** representative;
   e. **You** comply with any inspection requirements imposed by law; and
   f. **You** pay the premium required by **us** when due.

47. **"Reside, "resides"** and **"residing"** mean to live at a dwelling which is that **person's** primary and legal domicile.

49. **"Temporary substitute auto"** means an **auto** that is a substitute for a **covered auto** while that **covered auto** is not in **use** due to breakdown, servicing, repair, **loss** or destruction if the substitute **auto** is:
   a. Rented by **you** or an **insured driver** under a written contract from a **business** engaged in renting **motor vehicles;**
   b. **Used** with the express permission of the **owner** of that **auto** and within the scope of that permission; and
   c. Not **owned** by **you**, a **family member** or any **insured driver**.

   An **auto** ceases to be a **temporary substitute auto** the earlier of when:

          a.     The **covered auto** it was replacing is repaired, restored to service or replaced;
          b.     The **auto** being rented is returned; or
          c.     30 days.

53.   **"You"** and **"your"** mean:
          a.     The **named insured**; and
          b.     If **residing** in the same **household** as the **named insured,** his or her:
              (1)     Spouse; or
              (2)     Domestic partner who is properly registered as such under any **state's** domestic partner or civil union law.

          This insurance does not apply for a spouse or domestic partner under any part of this policy if the **named insured** is not a **person** or a trust for a **person.**

## CLAIM FOR RELIEF

31. Permanent General seeks declaratory judgment, pursuant to the Federal Declaratory Judgments Law, 28 U.S.C. § 2201 *et seq.*, and F.R.C.P. 57, on the following points:

    a.     That Justin Schwear is not an insured under the Policy;

    b.     That the 2012 Intentional Truck is not an insured vehicle under the Policy;

    c.     That business use is not covered under the Policy;

    e.     That there is no coverage under the Policy for the accident; and

    f.     That Permanent General had no duty to defend the Underlying Lawsuit.

32. In requesting this declaratory relief, Permanent General is requesting an interpretation of the rights, legal status, and legal relations of the parties pursuant to the above law and facts.

33.     Requesting such interpretation, and the Court thereafter providing such an interpretation, is appropriate under the provisions of the Federal Declaratory Judgments Law, 28 U.S.C. § 2201 *et seq.* and F.R.C.P. 57.

WHEREFORE, Permanent General Assurance Corporation of Ohio requests a determination of the rights, legal status, and/or other legal relations of the parties pursuant to the above law and facts, and for all other good and valuable relief to which Permanent General may be entitled, and for which the Court deems just and proper.

PERMANENT GENERAL DEMANDS TRIAL TO A JURY ON ALL TRIABLE ISSUES.

DATED this 10th day of September, 2019.

s/     *L. Kathleen Chaney*
L. Kathleen Chaney
LAMBDIN & CHANEY, LLP
4949 South Syracuse Street, Suite 600
Denver, CO 80237
(303) 799-8889
(303) 799-3700 (facsimile)
Email:  kchaney@lclaw.net
*Attorneys for Plaintiff Permanent General*

Plaintiff's Address:
P.O. Box 305054
Nashville, TN 37230-5054